**Entered on Docket**
**February 23, 2009**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**Signed and Filed: February 23, 2009**

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    ) Bankruptcy Case
                                         ) No. 03-32715DM
BROBECK, PHLEGER & HARRISON, LLP,        )
                                         )
                    Debtor.              ) Chapter 7
_____)

**MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO CLAIM OF
NICHOLAS L. SAAKVITNE, TRUSTEE OF BROBECK RETIREMENT SAVINGS PLAN**

The trustee for debtor's retirement savings plan filed a
claim against the estate for $4,416,786.73 due to unpaid employer
contributions for the year 2002.  The case trustee objected,
asserting that such claims had been released or waived in prior
settlements.  Because the claims were effectively released or
waived, the case trustee's objection as to the unpaid
contributions is SUSTAINED, with a portion of the claim being
allowed in the amount of $215,179.71.

**FACTS**[1]

The dissolution of the law firm of Brobeck, Phleger &
Harrison, LLP ("Brobeck") was announced to the firm's partners and
employees on January 31, 2003.  An amendment of Brobeck's
partnership agreement appointed a Liquidation Committee as the

_____
[1] This memorandum decision constitutes the Court's findings
of fact and conclusions of law pursuant to Fed. R. Bankr. P.
7052(a).

-1-

administrator of Brobeck's retirement savings plan ("Plan") to carry out Brobeck's dissolution.  On March 25, 2003, due to the resignation of UMB Bank, N.A. as the trustee of the Plan, the Liquidation Committee appointed Nicholas L. Saakvitne as the Plan's successor trustee ("Plan Trustee").

It is undisputed that the Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),[2] and is an "individual account plan" or "defined contribution plan" under section 1002(34) that covered substantially all employees and partners of Brobeck.  It consists of a 401(k) portion, a profit sharing portion for staff, and a profit sharing portion for partners.  The Plan is also subject to a Trust Agreement, which provides, among other things, that a trustee is the named fiduciary with the authority and responsibility to invest, manage, and control the assets of the Trust Fund.  It is also undisputed that Brobeck did not make the profit sharing and matching employer contributions to the Plan for 2002.

On September 17, 2003, a group of Brobeck's largest creditors commenced this bankruptcy case by filing an involuntary chapter 7 petition.  The petition was uncontested, and on October 10, 2003, this Court entered its order for relief and subsequently appointed an interim trustee.  Ronald F. Greenspan was elected case trustee ("Case Trustee") on November 21, 2003.

On January 23, 2004, the Plan Trustee, on behalf of the Plan, filed a claim against the estate in the amount of $6,400,419.50,

---

[2] All citations are to ERISA, as amended, 29 U.S.C. §§ 1001 et. seq. unless otherwise noted.

-2-

consisting of (1) a claim of $819,675.38 for "matching contribution" required of Brobeck for the 2002 Plan Year, but which remains unpaid; (2) a claim of $1,863,317.61 for a "profit sharing contribution" for staff required of Brobeck for the 2002 Plan Year, but which remains unpaid; and (3) a claim of $3,717,426.51 for "partner contributions" required of Brobeck for the 2002 Plan Year, but which remains unpaid. A supplement to the initial claim was filed on November 15, 2004, in the amount of $2,281.24, bringing the total to $6,402,700.74.

On November 23, 2005, the Case Trustee filed a motion (the "Employee Claims Settlement Motion") through which he sought authority under Bankruptcy Rule 9019(b) to enter into binding settlements with former employees without further order of the court (the "Employee Claims Settlement Program"). Under the terms of the Employee Claims Settlement Program, settling employees would receive allowed claims in the full amount of their missed retirement plan contributions for 2002 as determined by an actuarial analysis.

On January 19, 2006, this Court entered an order approving the Employee Claims Settlement Program. The terms of that order directed any settlements on account of Plan contributions to be offset, dollar for dollar, against the Plan Trustee's claims.

On May 27, 2008, pursuant to 11 U.S.C. § 502(b), the Case Trustee filed an objection to the Plan Trustee's claim. Since the January 19, 2006 settlement order, the Case Trustee reached an agreement with virtually all of Brobeck's eligible former employees on the missed 2002 contributions. As a result, the Case Trustee asserted that the only portion of the Plan Trustee claims

-3-

attributable to missed 2002 contributions on behalf of former

Brobeck employees is $215,179.71.[3]

Prior to the settlement order in 2006, the Case Trustee began
investigating and identified several litigation claims that could
be asserted against Brobeck's former partners ("Former Partners").
He eventually reached settlements with all of the Former Partners.
The Case Trustee alleged that each of those settlements provided
for a withdrawal (or deemed disallowance) of the Former Partners'
proofs of claim, and included a global release as to any Plan
claims against the estate, but retained the Former Partners'
rights as to the Plan directly - viz., to get distributions from
funds already paid into the Plan.[4]

---

[3] This amount consists of the 90 potential retirement plan
claims of former Brobeck employees who did not assert a retirement
plan claim, and who either (a) did not respond to the Employee
Claims Settlement Program, or (b) rejected the Trustee's
settlement offer.

[4] The release paragraph of the settlement agreement with the
Former Partners, in relevant part, provides:

> The Former Partner shall and hereby does waive, release,
> acquit, hold harmless, and forever discharge the Trustee,
> Brobeck's bankruptcy estate, and Brobeck ... but
> excluding all former partners and employees of Brobeck
> (the "Trustee Released Parties") from any and all claims,
> obligations, demands, actions, causes of action, and
> liabilities of whatever kind and nature or character and
> description ... that could have been or could be asserted
> against the Trustee Released Parties based upon any fact,
> circumstances, or occurrence relating to Brobeck,
> Brobeck's chapter 7 estate, or the Bankruptcy Case
> arising through and including the date of this Settlement
> Agreement and Mutual Release, ... including, without
> limitation, claims ... (iii) subject to paragraph 12
> hereof, for retirement and other benefits[.]

Paragraph 12, the "carve out" paragraph entitled "No
Impairment of Retirement Plan Rights," reads:

-4-

On July 2, 2008, the Plan Trustee filed a response in opposition to the Case Trustee's objection. The Plan Trustee had no objection to the Case Trustee's proposal that the former employees claim be allowed in the amount of $215,179.71, and agreed that this resolved the Plan claim in full for item (2), $1,863,317.61 for "profit sharing contribution" for staff, the staff share of the 2002 "matching contribution" claim in the amount of $120,376.63, and all of the supplemental claim for 2003 in the amount of $2,281.24. Therefore, claims of the former employees are no longer at issue in this case.

However, the Plan Trustee objected to the Case Trustee's proposal that the portion of the claim attributable to the retirement claims of Former Partners be disallowed in its entirety. In support, the Plan Trustee posed three arguments. First, the terms of the Trust Agreement obligated Brobeck to make the matching and profit sharing contributions to the Plan, and since the claims being asserted here are contractual in nature, he as Plan Trustee is responsible for enforcement of contributions, and the proper party to bring a direct action or file a proof of claim for damages for unpaid contributions, not the Former Partners. Moreover, he asserted that this liquidated, undisputed debt belongs to, and is an asset of, the Plan. Second, since

_____

The Parties do not intend the foregoing releases, nor the withdrawal and/or disallowance of claims provided for herein, to release, waive, affect or impair any rights of the Former Partner to receive, nor does the Trustee claim any rights to or assert any interest in, any and all distributions or payments or other benefits the Former Partner may be entitled to receive from the <u>assets</u> of the retirement plans. (Emphasis added).

Case: 03-32715   Doc# 2668   Filed: 02/23/09   Entered: 02/23/09 15:00:52   Page 5 of 23

neither the Plan nor the Plan Trustee were parties to the
releases, and because the Plan never released its claims, the
settling Former Partners had no authority to release claims that
belonged to the Plan - a total of $4,416,786.73. Third, the Plan
Trustee disputed that the settling Former Partners released all
claims against the estate, arguing that paragraph 12 of the
release, "No Impairment of Retirement Plan Rights," specifically
"carved out" not only assets that were in the Plan at the time,
but the "asset" consisting of its claim for contributions which
were contractually owed and remained unpaid. In other words, he
asserts that the Case Trustee's position ignores the fact that the
claim for unpaid contributions is an "asset" of the Plan and under
the clear language of the carve out was not covered by the
release.

On July 11, 2008, the Case Trustee filed his reply. He
argued that the Former Partners are the proper parties-in-interest
regarding Plan claims pursuant to sections 502(a)(1)(B) and
502(a)(2).[5] For claims under section 502(a)(2), the Case Trustee
cited the recent U.S. Supreme Court case, LaRue v. DeWolff, Boberg
& Assocs., __ U.S. __, 128 S.Ct. 1020, 1026 (2008), which held
that in cases of defined contribution plans where breaches of
fiduciary duties directly impair the value of plan assets in a
participant's individual account, as distinct from plan injuries,
the participant has an individual remedy. Therefore, he alleged,
since the Former Partners had claims against Brobeck for unpaid

---

[5] These ERISA sections are actually 29 U.S.C. §§
1132(a)(1)(B) and 1132(a)(2), but generally referred to as
sections 502(a)(1)(B) and 502(a)(2).

-6-

contributions to their individual accounts, they had the legal
capacity to assert and compromise those missed contribution
claims.   The Case Trustee also asserted that paragraph 12 (quoted
in footnote 4) did not reserve any claims against the estate; it
is a reservation that applied only to a Former Partners' right to
receive distributions from assets that are in the Plan, not assets
of the bankruptcy estate.   In other words, the Former Partners
released all of their claims against the estate, including claims
ERISA might give them to compel payment of missed contributions
for their benefit, but did not release their rights to obtain
distributions from the Plan out of the assets held within them.

     At the end of a hearing on July 16, 2008, the parties were
ordered to provide supplemental briefing on the issue of whether
the Former Partners had standing under ERISA to sue Brobeck for
unpaid contributions to the Plan, or whether that claim could only
be brought by the Plan Trustee.

     The Plan Trustee filed his supplemental brief on August 15,
2008.   In short, he argued that participants such as the Former
Partners had no standing to sue for unpaid contributions for three
reasons: 1) both the Trust Agreement and ERISA vest the Plan
Trustee with full and exclusive authority (including settlements)
over Plan assets, which includes unpaid contributions; 2) that
section 502(a)(1)(B) and case law provides only for claims by
participants to enforce personal benefit rights and does not
provide for claims for unpaid contributions, but rather only the
Plan can bring such claims because any recovery goes to the Plan
rather than the individual; and 3) due to the common law of
trusts, on which much of ERISA is based, a beneficiary may only

-7-

assert a claim for unpaid contributions derivatively when the plan
trustee has breached his fiduciary duty by failing to recover the
contributions, which has not occurred here.  Therefore, since the
Former Partners lacked standing to bring a claim for the unpaid
contributions, then as a matter of law they could not have
released them.

In the Case Trustee's supplemental brief filed on September
5, 2008, he argued that since the Former Partners had claims
against Brobeck for the unpaid contributions pursuant to sections
502(a)(1)(B) and/or 502(a)(2), then they were empowered to release
their statutory ERISA claims.  Alternatively, even if they had no
ERISA remedy, they still were empowered to give knowing and
voluntary waivers of their rights to receive Plan benefits and the
Court should uphold the settlement agreements.

A further hearing on this matter was held on November 3,
2008.  There, the Court raised the issue of whether the unpaid
contributions were indeed "assets" of the Plan, and further
ordered the parties to provide any case law supporting the notion
that the Former Partners had a claim under section 502(a)(1)(B),
the apparently more appropriate remedy in this case.  The Court
also granted the Plan Trustee an opportunity to respond to the
Case Trustee's "release or waiver" argument.  The Case Trustee
asserted essentially his same previous arguments, but cited recent
case law suggesting that the Former Partners had individual claims
against Brobeck under section 502(a)(1)(B) to assert or release.
With regard to release or wavier, the Plan Trustee argued that:
(1) only he as trustee had the contractual claim against Brobeck
and thus the Former Partners as beneficiaries had no authority to

-8-

release such claim; (2) neither the Plan nor the Trust Agreement contains any language allowing the Former Partners to waive entitlement to funds collected by the Plan Trustee; (3) and even if waiver was permitted, the settlement language was ambiguous and the Former Partners did not "knowingly" and "voluntarily" waive their right to share in the unpaid contributions.[6]

**ISSUES**

1.  Did the Former Partners have a claim against Brobeck under 502(a)(2) that could be released?

2.  Did the Former Partners have a claim against Brobeck under 502(a)(1)(b) that could be released?

3.  Even if the Former Partners have no cognizable ERISA claim against Brobeck could they waive the right to share in any unpaid employer contributions the Plan Trustee might collect?

**DISCUSSION**

Although the ultimate issue in this claim objection is whether the Former Partners released their ERISA claims against Brobeck for the 2002 contribution and/or waived their rights to share in any funds collected, the question that must first be answered is whether the Former Partners had a cognizable ERISA claim against Brobeck to release. It is undisputed that the

_____

[6] The Court interprets the settlement language (quoted in footnote 4) to mean the following: the general "release" was a release of any and all claims by the Former Partners against Brobeck and its chapter 7 estate, including any claims against the Plan (except funds already paid into the Plan as carved out by paragraph 12). Therefore, when the Court uses the term "release," it is referring to Plan claims against Brobeck or its estate and the release of any such claims. When discussing "waiver," the Court is referring to the Former Partners' waiver of any right to share in the unpaid contributions, if ever collected by the Plan Trustee.

-9-

Former Partners are "participants" of the Plan as defined in section 1002(7).

## I.   The Former Partners Did Not Have A Claim Under 502(a)(2).

A suit brought under section 502(a)(2) seeks to hold plan fiduciaries liable in their personal capacities for breaches of their duty to the plan.  Section 502(a)(2) states:

> A civil action may be brought —
>
> (2) ... by a participant ... or fiduciary for appropriate relief under section 1109[7] [which makes a fiduciary liable for losses to a plan resulting from the fiduciary's breach of fiduciary duties].

Until recently, participants could not bring claims under section 502(a)(2) for losses to their individual accounts. However, the prevalence of today's defined contribution plans rendering defined benefit plans obsolete, and the Supreme Court decision in LaRue, 128 S.Ct. 1020, 1026, has changed the landscape.  There, the Court held that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary

---

[7] Section 1109 [409] in relevant part provides:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

-10-

breaches that impair the value of plan assets in a participant's individual account." (Emphasis added). Thus, if a claim existed against Brobeck under section 502(a)(2), the Former Partners as individual participants would have had standing to bring it, or release it. Consequently, this Court rejects the Plan Trustee's argument that only he and not the Former Partners could have a section 502(a)(2) claim against Brobeck. However, as discussed below, the Court finds that neither had any such claim.

## A. Brobeck Was A Fiduciary Of The Plan.

Only plan fiduciaries may be sued for breach of fiduciary duty under section 502(a)(2). <u>Acosta v. Pac. Enters.</u>, 950 F.2d 611, 617 (9th Cir. 1991). Under ERISA, a person is a fiduciary with respect to a plan <u>to the extent</u> he exercises any discretionary authority or discretionary control over a plan's <u>management</u>, <u>administration</u>, or <u>assets</u>. Section 1002(21)(A). (Emphasis added). This definition of fiduciary should be liberally construed. <u>Thomas, Head & Greisen Employees Trust v. Buster</u>, 24 F.3d 1114, 1117 (9th Cir. 1994).

Simply being the Plan's administrator does not make Brobeck (or the Liquidating Committee) a fiduciary of the Plan. <u>Pegram v. Herdrich</u>, 530 U.S. 211, 225 (2000). However, Brobeck's Plan and Trust Agreement state:

> The Committee shall be the Administrator of the Plan ... and shall have the exclusive authority and responsibility for all matters in connection with the operation and administration of the Plan not specifically allocated to the Trustee. (Plan, 16.02);

> The Administrator has full discretionary authority to administer and interpret the Plan ....(Plan, 16.03);

> The Firm ... shall have the authority to control and manage the operation and administration of the Plan.

-11-

(Trust Agreement, 1.1).

Therefore, by its own admissions, Brobeck is a fiduciary of the Plan.

### B. Brobeck's Failure To Pay Its Share Of The Contributions Was Not A Breach Of Its Fiduciary Duty.

Although the Court finds that Brobeck was a fiduciary of the Plan, the analysis does not end there. ERISA requires that the fiduciary with two hats, such as an employer who is also the plan's administrator, wear only one at a time, and wear the fiduciary hat when making fiduciary decisions. <u>Pegram</u>, 530 U.S. at 225. Actions such as creating, amending, and terminating a plan are plan sponsor, not fiduciary, activities. <u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 443-444 (1999). It will only give rise to ERISA liability if the defendant performed the act while "wearing the hat" of an ERISA fiduciary, rather than the hat of a corporate officer. <u>Pegram</u>, 530 U.S. at 225.

Therefore, the threshold question in an ERISA section 502(a)(2) claim is not whether the action by the person adversely affected a plan participant's interest, but whether was the person performing a fiduciary function when taking the action subject to the complaint? <u>Id.</u> at 226. Hence, was Brobeck carrying out its discretionary authority or discretionary control over the Plan's management, administration, or assets when it failed to pay its share of the contributions to the Plan for 2002?

Turning to the issue of Plan "assets," at the November 3 hearing the Court inquired about whether the unpaid contributions were an asset of the plan. Although the Court recognizes the distinction between defined "benefit" and defined "contribution"

-12-

plans as set forth in <u>LaRue</u>, when determining whether something is an "asset" of a plan, the type of plan involved is of no consequence to that analysis, as will be explained later. Presumably, if the unpaid contributions were not an asset, it follows that the Former Partners (or the Plan Trustee) would not have a section 502(a)(2) claim to assert or release against Brobeck under an asset theory.

The Plan Trustee asserts that the unpaid contributions became assets when they were contractually due and owing, and cites <u>U.S. v. Jackson</u>, 524 F.3d 532 (4th Cir. 2008), and <u>U.S. v. Grizzle</u>, 933 F.2d 943 (11th Cir. 1991) in support.  The Case Trustee seems to presume such unpaid contributions are an asset of the Plan.  Both trustees are incorrect.

With regard to employer contributions,"[u]ntil the employer pays the employer contributions over to the plan, the contributions do <u>not</u> become plan <u>assets</u> over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan." <u>Cline v. Indus. Maint. Eng'g & Contracting Co.</u>, 200 F.3d 1223, 1234 (9th Cir. 2000)(emphasis added)(citing <u>Local Union 2134, United Mine Workers v. Powhatan Fuel, Inc</u>., 828 F.2d 710, 714 (11th Cir. 1987)(holding that until monies are paid by corporation to the plan there are no assets in the plan under the provisions of ERISA). <u>See Collins v. Pension & Ins. Comm.</u>, 144 F.3d 1279, 1282 (9th Cir. 1998)("[a]lthough ERISA does not explicitly define "'plan assets,'" a plain interpretation of the term does not encompass future

-13-

1  contributions not yet made.").[8]

2      Therefore, since the unpaid contributions were not "assets"

3  of the Plan, the Former Partners had no section 502(a)(2) claim to

4  assert or release against Brobeck.  Even LaRue seems to imply that

5  an individual has a claim under section 502(a)(2) only for

6  fiduciary breaches that impair the value of plan assets in a

7  participant's individual account.  LaRue, 128 S.Ct. at 1026.

8      Yet, even if the unpaid contributions are not an asset of the

9  _____

10      [8] Even if the Court applied the more lenient standard
    recognized by other courts of looking to the Plan's language to
11  determine whether unpaid contributions are an asset (see cases
    cited below), Brobeck's Plan and Trust Agreement have no specific
12  language addressing or even contemplating that unpaid employer
    contributions are Plan assets.  In fact, the Trust Agreement
13  suggests that contributions do not become a Plan asset until
    "received," which implies "when they are paid over" to the Plan
14  Trustee:

15          "All contributions made to the Plan shall be paid over to
            the Trustee ....  Contributions so received ... shall
16          constitute the Trust."  (Article I, section 1.2).

17
    ["Traditionally, the 'proper rule, developed by caselaw [sic] is
18  that unpaid employer contributions are not assets of a fund unless
    the agreement between the fund and the employer specifically and
19  clearly declares otherwise.'" Board of Trs. of the Ohio
    Carpenters' Pension Fund v. Bucci (In re Bucci), 493 F.3d 635, 642
20  (6th Cir. 2007)(quoting ITPE Pension Fund v. Hall, 334 F.3d 1011,
    1013 (11th Cir. 2003).  See e.g., Trustees of Conn. Pipe Trades
21  Local 777 Health Fund v. Nettleton Mech. Contractors, Inc., 478 F.
    Supp. 2d 279, 283 (D. Conn. 2007) (where fund agreements contained
22  language defining plan assets as "such sums of money as have been
    or shall be paid to the Pension Fund by the Employers," and "sums
23  of money that have or will be paid or which are due and owing to
    the Fund by the Employers," court determined that due but unpaid
24  contributions to plan are plan assets); Board of Trustees,
    Adirondack Carpenters Pension Fund v. Parker (In re Parker), 388
25  B.R. 11, 20 (Bankr. N.D. N.Y. 2008)(recognizing exception; finding
    that unpaid contributions were a contractual payment obligation
26  but no explicit fund language stated when contributions become
    fund assets; therefore plan did not support plaintiff's theory
27  that unpaid employer contributions became plan assets when
    contractually due)].

28

                                  -14-

Plan and the Court interprets <u>LaRue</u> too narrowly, could the Former
Partners still have a 502(a)(2) claim if Brobeck was carrying out
its discretionary authority or discretionary control over the
<u>management</u> or <u>administration</u> of the <u>Plan</u> when it failed to make
its share of the 2002 contributions?  Both the Case Trustee and
Plan Trustee assert that Brobeck breached its fiduciary duty -
i.e., engaged in misconduct - when it failed to pay its share of
the 2002 contributions to the Plan.

     The clear majority of the few courts dealing with the issue
of unpaid employer contributions, regardless of the plan type,
hold that choosing not to make employer contributions is a
business or corporate function, not a fiduciary function with
respect to a plan.  <u>See</u> <u>Navarre v. Luna (In re Luna</u>), 406 F.3d
1192, 1203, 1207 (10th Cir. 2005)(financially strapped employer's
decision to use their limited funds to pay other business expenses
rather than to make contributions, while adversely impacting the
plan, was not a breach of fiduciary duty because a contractual
obligation to fund a plan is not a discretionary decision
regarding management of plan or plan assets); <u>Trustees of the</u>
<u>Graphic Commc'ns Int'l Union Upper Midwest Local 1M Health and</u>
<u>Welfare Plan v. Bjorkdal</u>, 516 F.3d 719, 732 (8th Cir. 2008)
(corporate officer facing limited cash flow who chooses to pay
corporate obligations in lieu of employer contributions to an
ERISA plan does not breach a fiduciary duty when he makes those
decisions wearing his corporate hat rather than his fiduciary duty
hat); <u>Local Union 2134, United Mine Workers of Am. v. Powhatan</u>
<u>Fuel, Inc</u>., 828 F.2d 710, 714 (11th Cir. 1987)(corporate
president's decision to pay bills other than insurance premiums to

-15-

health plan was not made in his fiduciary capacity of the plan.
But *see* <u>Trs. of the Conn. Pipe Trades Local 777 Health Fund v.</u>
<u>Nettleton Mech. Contractors, Inc.</u>, 478 F. Supp 279, 284 (D. Conn.
2007)(choosing to pay other creditors over funding the plan was a
breach of fiduciary duty, but the court first found that unpaid
contributions were an asset of the plan). The Court believes the
instant case to be more like the former majority of cases, and
less like the latter. Consequently, the Former Partners had no
section 502(a)(2) claim to assert or release.[9]

## II. The Former Partners Likely Had A Claim Against Brobeck Under Section 502(a)(1)(B).

Section 502(a)(1)(B) provides that a "participant" has
standing to bring a civil action to recover benefits due to him
under the terms of the plan, to enforce his rights under the terms
of the plan, or to clarify his rights to future benefits under the
terms of the plan.[10] Participants suing for monetary relief for
benefits to which they claim entitlement under the terms of a
benefit plan must proceed under ERISA section 502(a)(1)(B). That
section "deals exclusively with contractual rights under the
plan." <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 521 n. 2

---

[9] The Court notes that the Plan Trustee also has no section 502(a)(2) claim against Brobeck because he has control only over "assets" of the Plan, and only the Plan's assets constitute the Trust. Since the unpaid contributions are not Plan assets, his argument that only he could pursue or settle a claim for the 2002 unpaid contributions relies on a faulty premise and must be rejected. Further, Brobeck's failure to pay its share of the contributions to the Plan Trustee would not be a breach of fiduciary duty.

[10] Section 502(a)(1)(B) also authorizes a "beneficiary" to bring such an action. A "beneficiary" under ERISA is a person designated to receive benefits based on a participant's eligibility. It is not at issue here.

-16-

1 (1996)(Thomas, J., dissenting); <u>Mass. Mut. Life Ins. Co. v.</u>
2 <u>Russell</u>, 473 U.S. 134, 146 (ERISA section 502(a)(1)(B), is
3 designed "to protect contractually defined benefits.").

4      There is no dispute that Brobeck had a contractual obligation
5 to make the 2002 contributions.  Therefore, if there is any claim
6 against Brobeck it would appear to be a claim for breach of
7 contract.  Here, the appropriate action, if any, would be a Former
8 Partners' claim to "recover benefits due."  Notably, since only
9 "participants" and "beneficiaries" have standing to assert claims
10 under section 502(a)(1)(B), the Plan Trustee as "fiduciary" lacks
11 standing to bring (or settle) a claim against Brobeck for the
12 unpaid contributions, at least under that section.

13      In <u>Gelardi v. Pertec Computer Corp.</u>, 761 F.2d 1323, 1324 (9th
14 Cir. 1985), the Ninth Circuit held that suits to recover benefits
15 under section 502(a)(1)(B) can be brought only against the plan,
16 not the employer.  However, it later recognized such suits may be
17 brought against plan administrators.  <u>See</u> <u>Taft v. Equitable Life</u>
18 <u>Assurance Soc'y</u>, 9 F.3d 1469, 1471 (9th Cir. 1993)("[t]he
19 beneficiary of an ERISA plan may bring a civil action against a
20 plan administrator" to recover benefits under [502](a)(1)(B));
21 <u>Everhart v. Allmerica Fin. Life Ins. Co.</u>, 275 F.3d 751 (9th Cir.
22 2001)(recognizing <u>Taft</u>'s holding that section 502(a)(1)(B) suits
23 can be brought against plan administrators).  Therefore, if the
24 Former Partners had a claim to the missed contributions as a
25 recovery of "benefits due," such claim could be asserted against
26 Brobeck as the Plan's administrator.

27      So, since Brobeck could be sued under section 502(a)(1)(B),
28 the question here is whether that section contemplates a

-17-

participant's claim for missed employer contributions as a proper claim to "recover benefits due?" As the Plan Trustee notes, published decisions regarding participant claims for unpaid contributions under section 502(a)(1)(B) are essentially non-existent. Claims typically brought by participants under that section include challenges to adverse benefit determinations, such as a plan's denial of disability payments, health benefits, pension benefits, and life insurance payments. However, as the Court noted in LaRue, earlier precedent is limited to cases involving defined benefit plans and does not control in cases for defined contribution plans, such as Brobeck's. LaRue, 128 S.Ct. at 1025.

In his second supplemental brief, the Case Trustee cited a recent post-LaRue Seventh Circuit case that suggests a participant of a defined contribution plan can indeed bring a claim for unpaid employer contributions under ERISA section 502(a)(1)(B). In Leister v Dovetail, Inc., 546 F.3d 875 (7th Cir. 2008), an employee participant, in what the Court determined was a "defined contribution plan" despite the absence of an actual plan writing, sued her employer under ERISA sections 502(a)(1)(B) and 502 (a)(2) for, inter alia, the employer's failure to make its contributions to her plan account. The employer instead pocketed the money. After a great deal of discussion on the statute of limitations imposed on claims under either section, which is not at issue here, the Seventh Circuit stated:

> Contributions to a plan and benefits owed by a plan are not necessarily equivalent, and section [502](a)(1)(B) authorizes suit only for benefits. But the benefits to which Leister was entitled were the assets that would have been in her 401(k) account had the defendants

-18-

complied with their fiduciary duties.

Id. at 881. Therefore, the Dovetail court has held that unpaid contributions are a "benefit due" and for which a participant can sue under section 502(a)(1)(B).

Although the Dovetail court also found that the employer's failure to pay its share of the contributions was a breach of its fiduciary duty, a finding not being made here, the end result is the same; a participant of a defined contribution plan can bring a claim for unpaid contributions as a "benefit due" under section 502(a)(1)(B). Because Dovetail dealt with a similar situation as in this case – unpaid employer contributions in the context of a defined contribution plan – the Court finds Dovetail persuasive and adopts its holding.

The Case Trustee also cited Simons v. Midwest Tel. Sales and Servs., Inc., 433 F. Supp 1007 (D. Minn. 2006). There, an employee sued her employer for unpaid matching contributions to her plan account under section 502(a)(1)(B). Although the defendants conceded that they owed her the money under the terms of the plan and summary judgment was therefore granted in favor of the employee, the court never disputed that her claim for unpaid contributions was a proper claim for "benefits due" under section 502(a)(1)(B). Id. at 1010.

Therefore, in light of Dovetail and Simons, and the trend towards a recognition that contribution plans create rights that are personal to the individual participants who make or for whom the contributions are made, the Court finds that the Former Partners likely had a claim to assert and thus release against Brobeck for the unpaid contributions under section 502(a)(1)(B).

-19-

Policy reasons also suggest that the participant Former Partners would have a section 502(a)(1)(B) claim against Brobeck. Clearly, Brobeck's failure to make its share of the 2002 contributions provides a claim for something and there must be a remedy. ERISA's preemption provision was not supposed to leave plan participants worse off than they had been under pre-ERISA state law. <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 114 (1989). But-for ERISA, the Former Partners would likely have a state law claim against Brobeck for breach of contract. The ERISA parallel to this is section 502(a)(1)(B) to which only the Former Partners would have standing.

The Court also points out that this matter does not come before it in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss or some other dispositive motion; it comes in the form of a claim objection and whether the Former Partners had standing to release their individual ERISA claims against Brobeck for the 2002 missed contributions. Therefore, the Court need not decide the merits of this potential ERISA (or non-ERISA) claim conclusively; there is enough to establish to the Court's satisfaction that the Former Partners had something to release when they settled with the Case Trustee. With that in mind, the Court now turns to the question of whether the Former Partners waived their rights to share in the 2002 unpaid contributions.

**III. Even If The Former Partners Have No Cognizable ERISA Claim Against Brobeck, They Waived The Right To Share In Any Unpaid Employer Contributions The Plan Trustee Might Collect.**

The Plan Trustee asserts that paragraph 12 "carves out" from the release not only the assets that were in the Plan at the time, but the "asset" consisting of the Plan's claims for contributions

-20-

which were contractually owed and remained unpaid. He also asserts that the release language was ambiguous and possibly the Former Partners could have believed that their claims for the 2002 unpaid contributions were not being released or waived. The Case Trustee argues that the Former Partners agreed to a global release of Plan claims and retained only their rights to the assets remaining in the Plan. The Court agrees that the Former Partners retained only their rights to the assets that were already within the Plan as of the settlement date.

Since the Court has found that the unpaid contributions were not an asset of the Plan, the "carve out" of paragraph 12 as a matter of law could not include them. Furthermore, no evidence has been submitted from any of the participant Former Partners stating that he or she did not intend to waive his or her right to share in the 2002 unpaid contributions the Plan Trustee may collect. As a result, the Court finds that any such right by the Former Partners was waived.[11]

There is a very practical aspect to the Court's decision quite apart from the foregoing legal analysis. At stake are defined contribution plan benefits, and any funds collected by the Plan Trustee would simply go back to each Former Partners' account (less Plan Trustee fees). Plainly, the essence of the Case

---

[11] Neither the Case Trustee nor the Court are asserting that the Plan Trustee never had a contractual right to recover the unpaid contributions. However, that right was abrogated when the Former Partners waived their right to share in any funds collected by the Plan Trustee should he succeed. Furthermore, neither the Case Trustee nor the Court is asserting or concluding that the Plan Trustee breached his fiduciary duties in any fashion with respect to Brobeck's Plan or the participants or beneficiaries thereof. His compliance of his fiduciary duties has never been in question.

-21-

Trustee's settlement with the Former Partners was to leave to them what was in the Plan, and to leave to him what was in the estate. Thus, if the Court allowed the Plan Trustee's claim it would be duplicative of what the Former Partners already waived or released.[12]

**CONCLUSION**

Based on the foregoing reasons, the Case Trustee's objection to the Plan Trustee's claim against the estate for $4,416,786.73 is SUSTAINED, with a portion of the claim being allowed in the amount of $215,179.71. The Court is concurrently entering an Order consistent with this Memorandum Decision.

**\*\*END OF MEMORANDUM DECISION\*\***

---

[12] On February 13, 2009, the Court received a letter from the Plan Trustee's counsel, directing the Court's attention to a recent U.S. Supreme Court case, Kennedy v. Plan Adm'r for DuPont Sav. and Inv. Plan, ___ U.S. ___, 129 S.Ct. 865 (Jan. 26, 2009). He offers Kennedy to support his argument that since nothing in the Plan permitted the Former Partners to waive their right to share in a contribution, they could not have done so.

The Court has read Kennedy and distinguishes it from the instant case. The policy behind Kennedy is to protect plan trustees from the extra burden of having to review and consider extraneous documents outside of the plan to determine to whom benefits are to be paid, and from potential litigation arising from those decisions. Here, the Plan Trustee is not being called upon to make a distribution. The issue is not about protecting him and to whom he should pay the unpaid contributions, but rather whether he is entitled to be paid. Further, Kennedy does not hold that there can never be an effective waiver of benefits, but only that the Plan Trustee is not bound by such waivers on the facts presented there.

-22-

```
 1                          COURT SERVICE LIST
 2   Bennett J. Murphy, Esq.
     John L. Jones, II, Esq.
 3   Hennigan, Bennett & Dorman LLP
     865 So. Figueroa St., Ste. 2900
 4   Los Angeles, CA 90017

 5   Robert A. Goodin, Esq.
     Francine T. Radford, Esq.
 6   Keith E. Johnson, Esq.
     Goodin, Macbride, Squeri, Day & Lamprey, LLP
 7   505 Sansome St., Ste. 900
     San Francisco, CA 94111
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

-23-